# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

MICHAEL COHEN,

               Plaintiff,

     v.

BEAN LLC, d/b/a FUSION GPS, and
GLENN SIMPSON,

               Defendants.

Case No. 1:18-cv-00183-JPO

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Shawn P. Naunton
ZUCKERMAN SPAEDER LLP
485 Madison Avenue, 10th Floor
New York, New York 10022
Tel: (212) 704-9600
Fax: (917) 261-5864
snaunton@zuckerman.com

William W. Taylor, III (pro hac vice motion pending)
Steven M. Salky (pro hac vice motion pending)
Rachel F. Cotton (pro hac vice motion pending)
Ezra B. Marcus (pro hac vice motion pending)
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, DC  20036
Tel: (202) 778-1800
Fax: (202) 822-8106
wtaylor@zuckerman.com
ssalky@zuckerman.com
rcotton@zuckerman.com
emarcus@zuckerman.com

*Counsel for Defendants*
*Bean LLC, d/b/a Fusion GPS, and*
*  Glenn Simpson*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

ARGUMENT ..................................................................................................................... 1

I.   STANDARDS OF LAW ............................................................................................ 1

II.  PLAINTIFF'S COMPLAINT IS OUT OF TIME. .................................................... 3

    A.  Cohen's Claim Arises from Alleged Acts of Publication by Fusion That
        Occurred More Than One Year before Cohen Filed His Complaint. ................... 3

    B.  BuzzFeed's Alleged Publication on January 10, 2017, Is Not the Relevant
        Starting Point for the Limitations Period on Cohen's Claim against Fusion. ...... 5

        1.  The Statute Was Running Prior to BuzzFeed's Publication Because the
             Discovery Rule Does Not Apply in This Context. ....................................... 6

        2.  Cohen Has Not Alleged That BuzzFeed's Publication Is An
             Independent Basis For His Claim Against Defendants, Nor Could He. ......... 7

III. COHEN IS AT LEAST A LIMITED PURPOSE PUBLIC FIGURE WHO
     HAS FAILED TO ADEQUATELY ALLEGE ACTUAL MALICE. .................... 10

    A.  Legal Standard for Pleading Actual Malice ..................................................... 10

    B.  Michael Cohen Is at Least a Limited Purpose Public Figure ........................... 12

        1.  Successful Invitation of Public Attention to Influence Others Prior to
             Incident That Is the Subject of Litigation ................................................. 12

        2.  Voluntary Injection into a Public Controversy Related to the Subject of
             the Litigation ........................................................................................... 14

        3.  Assumed a Position of Prominence ......................................................... 18

        4.  Maintained Regular and Continuing Access to the Media and Other
             Channels of Effective Communication ..................................................... 19

    C.  Cohen Has Failed to Allege 'Actual Malice': The Malice Allegations in
        the Complaint Are Insufficient and/or Purely Conclusory ............................. 21

IV. CONCLUSION .................................................................................................... 25

## TABLE OF AUTHORITIES

**CASES**

*ACTV, Inc. v. Walt Disney Co.*,
  No. 01 CIV.8402 (JSR), 2002 WL 922172 (S.D.N.Y. May 7, 2002) ....................................... 6

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ............................................................................................................... 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................... 1, 11, 21

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................................... 1, 11

*Benak ex rel. Alliance Premier Growth Fund v. Alliance Cap. Mgmt.*,
  435 F.3d 396 (3d Cir. 2006) ..................................................................................................... 2

*Biro v. Condé Nast*,
  807 F.3d 541 (2d Cir. 2015) ........................................................................................... *passim*

*Biro v. Condé Nast*,
  963 F. Supp. 2d 255 (S.D.N.Y. 2013) .............................................................................. *passim*

*Cabello-Rondón v. Dow Jones & Co.*,
  No. 16-cv-3346 (KBF), 2017 WL 3531551 (S.D.N.Y. Aug. 16, 2017) ........................... 11, 23

*Celle v. Filipino Reporter Enters. Inc.*,
  209 F.3d 163 (2d Cir. 2000) ................................................................................................... 10

*Church of Scientology Int'l v. Behar*,
  238 F.3d 168, 173 (2d Cir. 2001) .......................................................................... 2, 10, 22, 24

*Dongguk Univ. v. Yale Univ.*,
  734 F.3d 113 (2d Cir. 2013) ................................................................................................... 22

*Effie Film, LLC v. Pomerance*,
  909 F. Supp. 2d 273 (S.D.N.Y. 2012) ..................................................................................... 2

*Egiazaryan v. Zalmayev*,
  No. 11 Civ. 2670 (PKC), 2011 WL 6097136 (S.D.N.Y. Dec. 7, 2011) .................................. 11

*Etheridge-Brown v. Am. Media, Inc.*,
  13 F. Supp. 3d 303 (S.D.N.Y. 2014) ....................................................................................... 7

*Farah v. Esquire Mag.*,
  736 F.3d 528 (D.C. Cir. 2013) ................................................................................................. 2

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
  314 F.3d 48 (2d Cir. 2002) ................................................................................. 8, 9

*Friedman v. Bloomberg L.P.*,
  884 F.3d 83 (2d Cir. 2017) ...................................................................................... 3

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974)................................................................................ 18, 19, 20, 23

*Gracia v. City of New York*,
  No. 16-cv-7329 (VEC), 2017 WL 4286319 (S.D.N.Y. Sept. 26, 2017)................................. 2, 8

*Hanly v. Powell Goldstein, LLP*,
  290 F. App'x 435 (2d Cir. 2008) ................................................................................... 6

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
  491 U.S. 657 (1989)................................................................................................. 22

*Hason v. Davis*,
  210 F.3d 354 (2d Cir. 2000) ...................................................................................... 6

*In re Thelen LLP*,
  736 F.3d 213 (2d Cir. 2013) ...................................................................................... 2

*Jankovic v. Int'l Crisis Grp.*,
  822 F.3d 576 (D.C. Cir. 2016) .................................................................................. 11

*Karaduman v. Newsday, Inc.*,
  51 N.Y.2d 531 (1980) ............................................................................................ 7, 8

*Lerman v. Flynt Distrib. Co.*,
  745 F.2d 123 (2d Cir. 1984) ........................................................................... *passim*

*Marcone v. Penthouse Int'l Mag. for Men*,
  754 F.2d 1072 (3d Cir.1985) .................................................................................... 12

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
  674 F.3d 369 (4th Cir. 2012) .................................................................................... 21

*McCarthy v. Dun & Bradstreet Corp.*,
  482 F.3d 184 (2d Cir. 2007) ...................................................................................... 8

*MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*,
  No. 17-CV-07568 (PGG) (KHP), 2018 WL 847014 (S.D.N.Y. Jan. 12, 2018)....................... 11

*New York Times Co. v. Sullivan*,
  376 U.S. 254 (1964).................................................................................................. 10

*Palin v. New York Times Co.*,
    264 F. Supp. 3d 527 (S.D.N.Y. 2017) ............................................................... 11

*Partington v. Bugliosi*,
    825 F. Supp. 906 (D. Haw. 1993) ....................................................................... 12

*Perks v. Town of Huntington*,
    251 F. Supp. 2d 1143 (E.D.N.Y. 2003) ............................................................. 20

*Ratner v. Young*,
    465 F. Supp. 386 (D.V.I. 1979) .......................................................................... 12

*Schatz v. Republican St. Leadership Comm.*,
    669 F.3d 50 (1st Cir. 2012)................................................................................. 21

*Seghers v. Morgan Stanley DW, Inc.*,
    No. 06 Civ. 4639 (GEL), 2007 WL 1404434 (S.D.N.Y. May 10, 2007) ................................. 6

*Shabel v. Stamm*,
    No. 89 CIV 1499 (LBS), 1990 WL 150476 (S.D.N.Y. Oct. 4, 1990) ....................................... 6

*Shamley v. ITT Corp.*,
    869 F.2d 167 (2d Cir. 1989) ........................................................................... 3, 6

*St. Amant v. Thompson*,
    390 U.S. 727 (1968)......................................................................... 10, 11, 22

*Tavoulareas v. Piro*,
    817 F.2d 761 (D.C. Cir. 1987) ........................................................................... 11

*Taylor v. Vt. Dep't of Educ.*,
    313 F.3d 768 (2d Cir. 2002) ............................................................................... 8

*Thea v. Kleinhandler*,
    807 F.3d 492 (2d Cir. 2015) ............................................................................... 2

*Underwager v. Salter*,
    22 F.3d 730 (7th Cir. 1994) ............................................................................. 18

*Van Buskirk v. New York Times Co.*,
    325 F.3d 87 (2d Cir. 2003) ................................................................................. 7

*Von Saher v. Norton Simon Museum of Art*,
    592 F.3d 954 (9th Cir. 2010) ............................................................................. 2

*World Boxing Council v. Cosell*,
    715 F. Supp. 1259 (S.D.N.Y. 1989) .................................................................. 23

*Woy v. Turner*,
  573 F. Supp. 35 (N.D. Ga. 1983) ........................................................................... 12

**RULES**

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 1, 2

N.Y. C.P.L.R. § 215(3) ................................................................................................ 3

Plaintiff Michael Cohen has spent the past decade serving as Donald J. Trump's attorney and all-purpose "fixer," seeking to control the damage from Trump's misdeeds—a high-profile role that has garnered Cohen substantial fame and notoriety, particularly as Trump ran for and then became the President of the United States.  In this lawsuit, Cohen seeks money damages from Fusion GPS and its principal, Glenn Simpson, for their purported role in disseminating a series of raw intelligence reports authored by former British intelligence officer Christopher Steele, which have become known as the Dossier.  Four of the reports in the Dossier contain statements about Cohen, some of which he alleges to be defamatory.  Cohen's complaint, however, suffers from two fatal flaws: it is barred by the applicable statute of limitations and it fails to adequately allege actual malice.  Accordingly, the complaint must be dismissed.

## ARGUMENT

### I.  STANDARDS OF LAW

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be  granted."  Fed. R. Civ. P. 12(b)(6).  To survive such a motion, "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'"  *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "'[N]aked assertions' or 'conclusory statements' are not enough."  *Id.* (quoting *Iqbal*, 556 U.S. at 678).  Under this standard, a plaintiff must plead sufficient facts to raise a plausible inference that each element of a cause of action is satisfied.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In a defamation case where the plaintiff is a public figure, the plaintiff "must show that the statements [he or she] complains of were (1) of and concerning [the plaintiff], (2) likely to be understood as defamatory by the ordinary person, (3) false, and (4) published with actual malice, that is, either knowledge of falsity or reckless disregard of the truth." *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001). If a defamation complaint fails to plausibly allege each of these elements, it must be dismissed for failure to state a claim. *See Biro*, 807 F.3d at 546–47 (affirming dismissal of defamation claim for failure to plausibly plead actual malice).

A complaint must also be dismissed pursuant to Rule 12(b)(6) if it plainly establishes that the plaintiff's claim is barred by the applicable statute of limitations. "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015) (citation omitted).

In assessing whether the complaint states a claim, a court may consider the complaint itself, any documents attached to the complaint, any statements or documents incorporated in the complaint by reference, and any matter subject to judicial notice. *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013). Judicial notice is properly taken of publicly available publications, including books, magazines, newspapers, and court filings. *See, e.g.*, *Farah v. Esquire Mag.*, 736 F.3d 528, 534 (D.C. Cir. 2013); *Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 960 (9th Cir. 2010); *Benak ex rel. Alliance Premier Growth Fund v. Alliance Cap. Mgmt.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006); *Gracia v. City of New York*, No. 16-cv-7329 (VEC), 2017 WL 4286319, at *1 n.1 (S.D.N.Y. Sept. 26, 2017); *Effie Film, LLC v. Pomerance*, 909 F. Supp. 2d 273, 299 (S.D.N.Y. 2012).

## II.    PLAINTIFF'S COMPLAINT IS OUT OF TIME.

"Defamation claims brought under New York law are subject to a one-year statute of limitations." *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 266 (S.D.N.Y. 2013) (citing N.Y. C.P.L.R. § 215(3)). Cohen filed his complaint on January 9, 2018. *See* ECF No. 1. Accordingly, his claim is time-barred because it accrued before January 9, 2017.

Cohen's complaint alleges two distinct types of publications of the allegedly defamatory statements concerning him in the Dossier: (1) Fusion's sharing the Dossier with others, including with its clients, media outlets, and David Kramer; and (2) BuzzFeed's subsequent publication of the Dossier to the public at large.[1] On the face of the complaint, Cohen's claim arises from *Fusion's* acts of "publication," not from the subsequent publication by BuzzFeed. And all of Fusion's alleged acts of publication took place before January 9, 2017. Indeed, BuzzFeed's publication of the Dossier, which occurred on January 10, 2017, is the only publication referenced in the complaint that took place less than one year before the complaint was filed. But Cohen does not allege that publication as the basis for his claim against Fusion, nor could he.

### A.    Cohen's Claim Arises from Alleged Acts of Publication by Fusion That Occurred More Than One Year before Cohen Filed His Complaint.

A cause of action for defamation hinges on a defendant's "publication" of a defamatory statement to a third party. *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 95 (2d Cir. 2017) (citation omitted). For purposes of the statute of limitations, the "cause of action for defamation accrues when the material is published." *Shamley v. ITT Corp.*, 869 F.2d 167, 172 (2d Cir. 1989).

---

[1] The complaint also references two articles about the Dossier published by other media outlets, *see* Compl. ¶ 6, but the Court can take judicial notice that neither of the referenced articles from media outlets other than BuzzFeed mentioned Cohen or contained any of the allegedly defamatory material that he identifies in his complaint. *See* Michael Isikoff, *U.S. intel officials probe ties between Trump adviser and Kremlin*, Yahoo News (Sept. 23, 2016), https://www.yahoo.com/news/u-s-intel-officials-probe-ties-between-trump-adviser-and-kremlin-175046002.html; David Corn, *A Veteran Spy has Given the FBI Information Alleging a Russian Operation to Cultivate Donald Trump*, Mother Jones (Oct. 31, 2016), https://www.motherjones.com/politics/2016/10/veteran-spy-gave-fbi-info-alleging-russian-operation-cultivate-donald-trump/.

The complaint makes perfectly clear that Cohen's defamation claim arises from acts of publication that Fusion allegedly undertook more than one year before the complaint was filed. The very first paragraph of the complaint reads as follows:

> This action arises from the immensely damaging and defamatory statements made by Defendants against Plaintiff through widely disseminated political opposition reports commissioned by opponents of presidential candidate Donald Trump. Defendants, a D.C.-based political opposition research firm and its principal, Glenn Simpson, published these reports, which came to be known as the "Dossier," in advance of the 2016 U.S. Presidential election . . . .

Compl. ¶ 1.  Thus, from the outset, the complaint identifies the basis for Cohen's claim as statements that "Defendants . . . published . . . *in advance of the 2016 U.S. Presidential election*." *Id.* (emphasis added).  To state the obvious, any statement published "in advance of the 2016 U.S. Presidential election" must have been published prior to January 9, 2017.

The remainder of the complaint details Fusion's alleged conduct prior to the 2016 election.  According to the complaint, "Defendants . . . started peddling the Dossier to media and journalists in September and October 2016."  *Id.* ¶ 5.  Specifically, Defendants allegedly "arranged for Steele to brief selected members of the print and online media" about the Dossier, and "[b]riefings were held for journalists from the New York Times, the Washington Post, CNN, Yahoo News, and others in September 2016."  *Id.* ¶ 6.  The latest act of publication that the complaint attributes to Defendants is alleged to have occurred "in November 2016," when Defendants allegedly "provided a copy of the Dossier's first sixteen reports, including at least one of the reports that falsely accused and defamed Plaintiff, to [David Kramer, a director of a private foundation led by U.S. Senator John McCain] for redelivery to Senator McCain."  *Id.* ¶ 7.

Although the complaint also references a publication by BuzzFeed on January 10, 2017, *see id.* ¶ 8, it leaves no doubt that Cohen's defamation claim against Fusion and Simpson arises from *Defendants'* alleged publications, all of which are alleged to have occurred prior to the

BuzzFeed publication.  As noted above, the very first paragraph states that "[t]his action arises from" Defendants' pre-election publications.  *Id.* ¶ 1.  The complaint likewise contends that Cohen's alleged injuries "resulted from" defamatory statements "published by Defendants."  *Id.* ¶ 9; *see also id.* ¶ 29 (alleging that Cohen suffered injuries "[b]y cause of Defendants' publication of the Dossier").  The complaint asserts that "Defendants published the Dossier and CIRs [Company Intelligence Reports] despite the fact that they did not know whether the defamatory accusations in CIRs 134-136 & 166 about Plaintiff were true."  *Id.* ¶ 18.  And in the concluding section that purports to set forth Cohen's "cause of action," the complaint alleges the "publication" element of the defamation claim by contending that "Defendants published false and defamatory statements concerning Plaintiff" "[t]hrough their direct and intentional publication to third parties such as clients, news media, journalists, and others."  *Id.* ¶ 33.

Because Cohen's defamation claim arises from acts of publication that Defendants allegedly undertook prior to January 9, 2017, the claim is plainly time-barred.

### B.     BuzzFeed's Alleged Publication on January 10, 2017, Is Not the Relevant Starting Point for the Limitations Period on Cohen's Claim against Fusion.

The complaint references only a single event that is alleged to have taken place less than one year before the complaint was filed: BuzzFeed's publication of the Dossier on January 10, 2017.  *See id.* ¶ 8.  Because Cohen filed his complaint almost exactly one year later, presumably he will argue that the limitations period should run from BuzzFeed's publication, either on the theory that Cohen could not reasonably have discovered Defendants' allegedly defamatory statements before that publication or on the theory that BuzzFeed's publication is an independent basis for his claim against Defendants.  Neither theory is viable.

**1.      The statute was running prior to BuzzFeed's publication because the discovery rule does not apply in this context.**

Cohen cannot argue that the limitations period only began running upon BuzzFeed's publication of the Dossier on the theory that, before that time, he could not reasonably have discovered the publications by Defendants that form the basis for his claim.  "A cause of action for defamation accrues when the material is published," even if the plaintiff could not reasonably have discovered the claim until later.  *Shamley*, 869 F.2d at 172 (affirming that statute ran from date that memoranda were "surreptitiously" placed in plaintiff's personnel file); *see also Hanly v. Powell Goldstein, LLP*, 290 F. App'x 435, 439 (2d Cir. 2008) ("Nor have plaintiffs brought to our attention any New York authority holding, as plaintiffs strenuously urge, that the statute should be tolled where it would have been impossible for the plaintiff to discover the libel within the limitations period."); *Hason v. Davis*, 210 F.3d 354 (2d Cir. 2000) (unpublished) ("Under New York law, an action to recover damages for defamation must be commenced within one year of the publication of the allegedly defamatory material.   When the plaintiff actually discovered the publication is not relevant." (citations omitted)); *Seghers v. Morgan Stanley DW, Inc.*, No. 06 Civ. 4639 (GEL), 2007 WL 1404434, at 6 n.6 (S.D.N.Y. May 10, 2007) ("New York law provides that defamation claims must be brought within one year of the date of utterance regardless of the date of discovery . . . ."); *ACTV, Inc. v. Walt Disney Co.*, No. 01 CIV.8402 (JSR), 2002 WL 922172, at *2 (S.D.N.Y. May 7, 2002) ("As to the discovery rule theory, New York law clearly holds that causes of action sounding (like these) in defamation and the like accrue at the time of publication, not at the time of discovery of the allegedly defamatory statement."); *Shabel v. Stamm*, No. 89 CIV 1499 (LBS), 1990 WL 150476, at *2 (S.D.N.Y. Oct. 4, 1990) ("Moreover, plaintiffs cannot avail themselves of any 'discovery rule,' whereby accrual of the cause of action [for defamation] would be postponed until the plaintiffs discovered, or by

an exercise of reasonable diligence should have discovered, sufficient facts to make them aware of the cause of action.").

### 2.   Cohen has not alleged that BuzzFeed's publication is an independent basis for his claim against Defendants, nor could he.

As noted above, the complaint ties Cohen's claim to *Defendants'* publications, not to subsequent publications by BuzzFeed or other media outlets.  *See supra* Part II.A (discussing Compl. ¶¶ 1, 9, 18, 29, 33).  The complaint specifically clarifies that Cohen's cause of action arises from Defendants' "*direct* and intentional publication to third parties such as clients, news media, journalists, and others," Compl. ¶ 33 (emphasis added), erasing any possible implication that Cohen might be trying to hold Defendants responsible for *indirectly* publishing the Dossier to the public through BuzzFeed.

Nor could Cohen have asserted BuzzFeed's publication as an independent basis for his claim against Defendants.  New York adheres to a single-publication rule, under which "the publication of a single defamatory item" gives rise to only one cause of action which accrues at the moment the item is first published.  *Van Buskirk v. New York Times Co.*, 325 F.3d 87, 89 (2d Cir. 2003).  In some situations, "notwithstanding the single publication rule, the publication of a work may constitute a 'republication'—giving rise to a new cause of action and re-starting the statute of limitations—in circumstances where the new publication arises from a conscious act that is undertaken in order to reach a new audience."  *Etheridge-Brown v. Am. Media, Inc.*, 13 F. Supp. 3d 303, 306 (S.D.N.Y. 2014).

But where such a "republication" occurs at the hands of a third party, it typically cannot support a new claim (with a new one-year clock) against the *original* publisher.  New York law "does not render the original publisher of a defamatory statement automatically liable for subsequent publications of the statement by others."  *Karaduman v. Newsday, Inc.*, 51 N.Y.2d

531, 540 (1980).  "[A] plaintiff may not recover damages from the original author . . . arising from the republication of a defamatory statement by a third party absent a showing that the original author was responsible for or ratified the republication."  *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 59 (2d Cir. 2002).  The original publisher must have "approved or participated in some other manner in the activities of the third-party republisher" in order to be liable for the republication.  *Karaduman*, 51 N.Y.2d at 540.

The complaint does not plausibly allege that Defendants approved of or were responsible for BuzzFeed's publication, and in fact the complaint's allegations support the opposite inference.  As an initial matter, the Court should not accept as true the allegation that, "[i]n a recent court filing, Fusion admitted that it had 'pre-publication' communications with BuzzFeed about its publication" of the Dossier.  Compl. ¶ 8.  Fusion's "recent court filing" actually *denied* any such communication: after agreeing, in a motion to quash a third-party subpoena in another case, to "produce pre-publication communications, *if any*, with BuzzFeed or Ben Smith concerning BuzzFeed's publication of the Dossier," Ex. 1 at 8 n.5 (emphasis added), Defendants noted in their reply brief that they "searched for and did not find any pre-publication communications between BuzzFeed/Smith and Fusion concerning the publication of the Dossier."  Ex. 2 at 7 n.8.[2]  But even if the Court were to accept the "pre-publication communications" allegation as true for purposes of the motion to dismiss, it would not support the reasonable inference that Defendants were "responsible for or ratified [BuzzFeed's]

---

[2]    Exhibit 1 to the Declaration of Shawn P. Naunton ("Naunton Declaration") is the Mem. of P. & A. in Supp. of Non-Party Mot. To Quash Subpoena or, in the Alternative, for a Protective Order, *In Re Third Party Subpoena to Fusion GPS*, No. 1:17-mc-01271 (D. D.C. Aug. 31, 2017), ECF No. 1-2, and Exhibit 2 to the Naunton Declaration is the Corrected Reply in Supp. Of Non-Party Fusion GPS's Mot. To Quash Third-Party Subpoena, or in the Alternative, for a Protective Order, *In Re Third Party Supoena to Fusion GPS*, No. 1:17-mc-02171 (D. D.C. Oct. 27, 2017), ECF No. 11.  The Court may consider these court filings at the pleadings stage as "documents incorporated in the complaint by reference."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)).  Alternatively, the contents of the court filings are subject to judicial notice.  *Gracia*, 2017 WL 4286319, at *1 n.1.

8

republication." *Fashion Boutique*, 314 F.3d at 59; *see also Biro*, 963 F. Supp. 2d at 269 & n.5 (declining to hold original publisher liable for republication by entity that it did not "own[] or operate[]" or "control").

Indeed, the complaint specifically alleges that BuzzFeed's publication was "beyond [Defendants'] control," negating any possible inference that Defendants were responsible for or ratified it. Compl. ¶ 4. And the complaint in Cohen's concurrently filed state-court lawsuit against BuzzFeed alleges, "[o]n information and belief," that "the decision to publish the Article and Dossier was made by BuzzFeed's Editor-in Chief, Defendant Ben Smith." Ex. 3 ¶ 1; *see also id.* ¶ 12 (alleging that "Defendant Smith . . . made the decision to publish").[3] Cohen's theory of liability in the instant case is that Defendants caused his alleged injuries because they "recklessly placed [the Dossier] beyond their control and allowed it to fall into the hands of media devoted to breaking news on . . . the Trump candidacy," Compl. ¶ 4, and that BuzzFeed's publication, after Trump's election as President, was the final example of such media coverage, *see id.* ¶ 8. But all of Defendants' supposedly "reckless" acts are alleged to have occurred more than one year before the complaint was filed, *see infra* Part II.A, and Defendants cannot be legally responsible for a subsequent republication that was "beyond their control." Compl. ¶ 4; *see Fashion Boutique*, 314 F.3d at 59; *Biro*, 963 F. Supp. 2d at 269 & n.5. Accordingly, even if the complaint identified BuzzFeed's publication as an independent basis for Cohen's claim against Fusion, which it does not, Cohen has not alleged facts that would support holding Fusion responsible for BuzzFeed's decision to publish the Dossier.

*          *          *

---

[3]    Exhibit 3 to the Naunton Declaration is the Complaint, *Cohen v. Buzzfeed*, No. 150231/2018 (Sup. Ct. N.Y. Jan. 9, 2018).

On the face of the complaint, Cohen's defamation claim "arises from" acts of publication that Defendants allegedly undertook more than one year before the complaint was filed. Accordingly, the claim is time-barred and must be dismissed.

## III.   COHEN IS AT LEAST A LIMITED PURPOSE PUBLIC FIGURE WHO HAS FAILED TO ADEQUATELY ALLEGE ACTUAL MALICE.

The Court should also dismiss the complaint because Cohen is a public figure and yet he wholly fails to plausibly plead actual malice.

### A.   Legal Standard for Pleading Actual Malice

"Whether a plaintiff is a public figure is a question of law for the court." *Celle v. Filipino Reporter Enters. Inc*., 209 F.3d 163, 176 (2d Cir. 2000).  In general, anyone who has "voluntarily sought and attained influence or prominence in matters of social concern" is considered a public figure.  *Id*.  The Second Circuit has set forth a four-part test for determining whether an individual is a limited purpose public figure.  A defendant must demonstrate that a plaintiff has:

> (1) successfully invited public attention to his views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected himself into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media.

*Lerman v. Flynt Distrib. Co*., 745 F.2d 123, 136–37 (2d Cir. 1984).

If a plaintiff is a public figure, he may not recover damages for defamatory statements unless he establishes that the statements were made with "actual malice"—that is, with the knowledge that the statements were false or with reckless disregard as to their falsity.  *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964).  Such "reckless disregard" requires that the "defendant in fact entertained serious doubts as to the truth of his publication."  *Behar*, 238 F.3d at 174 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)).  Plausible allegations of such doubt include: "(1) whether a story is fabricated or is based wholly on an unverified, anonymous

source, (2) whether the defendant's allegations are so inherently improbable that only a reckless person would have put them in circulation, or (3) whether there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *Id.* (citing *St. Amant*, 390 U.S. at 732).[4] The "actual malice standard does not measure malice in the sense of ill will or animosity, but instead the speaker's subjective doubts about the truth of the publication." *Id.*

The Second Circuit has recognized the "significant" "hurdles to plausibly pleading" actual malice in a complaint, but held that Federal Rule of Civil Procedure 8 does not permit a defamation plaintiff to evade the pleading standard of *Iqbal* and *Twombly*. *Biro*, 807 F.3d at 545. As a result, "a defamation complaint by a public figure must allege sufficient particularized facts to support a claim of actual malice by clear and convincing evidence, or the complaint must be dismissed." *Palin v. New York Times Co.*, 264 F. Supp. 3d 527, 536 (S.D.N.Y. 2017). Where plaintiffs have not adequately alleged actual malice, courts have not hesitated to dismiss the complaint. *See, e.g.*, *Biro*, 807 F.3d at 546 (upholding the dismissal of a complaint for failure to plausibly allege actual malice); *Biro*, 963 F. Supp. 2d at 279; *Egiazaryan v. Zalmayev*, No. 11 Civ. 2670 (PKC), 2011 WL 6097136, at *8 (S.D.N.Y. Dec. 7, 2011); *Cabello-Rondón v. Dow Jones & Co.,* No. 16-cv-3346 (KBF), 2017 WL 3531551, at *7–11 (S.D.N.Y. Aug. 16, 2017); *MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*, No. 17-CV-07568 (PGG) (KHP), 2018 WL 847014, at *8 (S.D.N.Y. Jan. 12, 2018). As discussed below, Cohen is a public figure and yet has failed to plausibly allege actual malice.

---

[4]   *See also Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 589-90 (D.C. Cir. 2016) (holding that to demonstrate actual malice, the plaintiff must show that "the defendant in fact harbored subjective doubt," such as through evidence that "it was highly probable that the story was '(1) fabricated; (2) so inherently improbable that only a reckless person would have put [it] in circulation; or (3) based wholly on an unverified anonymous telephone call or some other source that [the defendants] had obvious reason to doubt'") (quoting *Tavoulareas v. Piro*, 817 F.2d 761, 790 (D.C. Cir. 1987)).

### B.      Michael Cohen Is at Least a Limited Purpose Public Figure

Michael Cohen—the high-profile attorney for Donald J. Trump, the President of the United States, Compl. ¶ 12—easily satisfies the standard for a limited purpose public figure.  He even concedes the issue of his public figure status in his complaint, recognizing that "[w]hen the plaintiff is a public figure, he must also allege that the defamatory statement was made with actual malice, meaning that the party who published the statement knew it was false or acted with reckless disregard to its truth or falsity."  *Id.* ¶ 31.  He goes on to make such allegations, albeit entirely conclusory and insufficient ones. *Id.* ¶ 35.

Cohen's concession that he is a public figure is understandable, given his representation of President Trump and his prominent role as Trump's "fixer."[5]  Even a cursory review of Cohen's public record makes clear that he is, at the very least, a limited purpose public figure.

### 1.      Successful Invitation of Public Attention to Influence Others Prior to Incident That Is The Subject of Litigation

Michael Cohen indisputably satisfies the first prong of *Lerman*'s public figure test, which considers whether the plaintiff "successfully invited public attention to his views in an effort to influence others prior to the incident that is the subject of litigation."  745 F.2d at 136.  Cohen sought and received abundant public attention long before the Dossier was published through his involvement in politics and his affiliation with Donald Trump.  He ran for New York City

---

[5]      Indeed, Cohen's legal representation of the President of the United States alone may render him a public figure. *See, e.g.*, *Marcone v. Penthouse Int'l Mag. for Men*, 754 F.2d 1072, 1086 (3d Cir.1985) ("if an attorney does more than merely represent the client in a strictly legal context—such as holding news conferences or otherwise affirmatively making a public issue of the case—then those activities may be counted in the public figure calculus"); *Partington v. Bugliosi*, 825 F. Supp. 906, 918 (D. Haw. 1993) (attorney who served as lead counsel in a controversial murder trial was a public figure where he "actively sought exposure to the media and voluntarily maintained a high profile throughout the trial"); *Ratner v. Young*, 465 F. Supp. 386, 399–400 (D.V.I. 1979) (defense counsel who voluntarily thrust themselves into vortex of famous murder case that had far-reaching effects on people not connected with it, and who stated several times that trial was a political trial, were public figures); *see also Woy v. Turner*, 573 F. Supp. 35, 38–39 (N.D. Ga. 1983) (sports agent who used media to promote his clients and himself was limited purpose public figure).

Council in 2003,[6] losing to Democrat Eva Moskovitz, and campaigned for a seat in the New York State Senate in 2009.[7]  He has sought to promote Trump as a political candidate since the inception of Mr. Trump's interest in a presidential run, "credit[ing] himself as the originator of Mr. Trump's run for president."[8]  In approximately 2010, Cohen created the website "Should Trump Run?" as part of an effort to generate interest in Trump running for president.[9]  He was then the first Trump aide to go to Iowa to begin to lay the groundwork for a presidential run, holding a press conference to champion Trump as a serious presidential contender.[10]  (Notably, this trip sparked its own controversy over concerns that it violated campaign finance laws.)[11]

Throughout Trump's campaign for President, Cohen was a top surrogate, frequently appearing on television on behalf of then-candidate Trump to promote Trump's candidacy,[12] as

---

[6]   New York City Campaign Fin. Bd., 2003 Gen'l Election Voter Guide, 4th City Council Dist., http://www.nyccfb.info/public/voter-guide/general_2003/cd_statement/CD04_Cohen_769.htm.

[7]   Michael Falcone, *Donald Trump's Political 'Pit Bull': Meet Michael Cohen*, ABC News (Apr. 16, 2011), http://abcnews.go.com/Politics/donald-trumps-political-pit-bull-meet-michael-cohen/story?id=13386747.

[8]   Alexandra Berzon, et al., *Intelligence Dossier Puts Longtime Trump Fixer in Spotlight*, Wall St. J. (Jan. 11, 2017), https://www.wsj.com/articles/intelligence-dossier-puts-longtime-trump-fixer-in-spotlight-1484178320.

[9]   Michael Falcone, *supra* note 7.

[10]   Peter Hamby, *Trump aide grabs attention in Iowa*, CNN Politics (Mar. 7, 2011), http://politicalticker.blogs.cnn.com/2011/03/07/trump-aide-grabs-attention-in-iowa/.

[11]   Ben Schreckinger & Cate Martel, *Trump's gang of misfits: From the grassroots base all the way to the burnt-orange top, this is not your typical presidential campaign*, Politico (Aug. 17, 2015), https://www.politico.com/story/2015/08/donald-trumps-gang-of-outlaws-121414.

[12]   *See, e.g.*, David Wright, *Aide: Trump an 'equal opportunity' attacker*, CNN Politics (Jan. 5, 2016), https://www.cnn.com/2016/01/05/politics/michael-cohen-new-day-interview/index.html (Cohen stating on CNN that Trump's fighting style was "equal opportunity" and "Don't throw the punch unless you're prepared to get hit back"); Rachel Chason, *Trump's lawyer asks 'says who' when told Trump is losing*, CNN Politics (Aug. 18, 2016), https://www.cnn.com/2016/08/17/politics/donald-trump-michael-cohen-polls/index.html; Ian Schwartz, *Trump Exposing Clinton, Women Turning Against Hillary For Being Enabler*, RealClear Politics (May 24, 2016), https://realclearpolitics.com/video/2016/05/24/fireworks_cnns_cuomo_vs_michael_cohen_trump_exposing_clinton _women_turning_against_hillary_for_being_enabler.html; Josh Nathan-Kazis, *Meet Michael Cohen, Donald Trump's Jewish Wingman*, Forward (July 20, 2015), https://forward.com/news/312123/meet-michael-cohen-donald-trumps-jewish-wingman/ (discussing three recent appearances on CNN); Jeremy Diamond, *Trump surrogate Michael Cohen back after rape remarks*, CNN Politics (Aug. 5, 2015), https://www.cnn.com/2015/08/05/politics/donald-trump-adviser-michael-cohen-back/index.html; Bryan Logan, *Donald Trump's attorney: Trump's sexual-assault accusers 'aren't even women he'd be attracted to,'* Business Insider (Oct. 18, 2016), http://www.businessinsider.com/michael-cohen-donald-trump-accusers-sexual-assault-trump-lawyer-2016-10; Raw Story, *Chris Cuomo grills Michael Cohen about Trump's 'hypocrisy' on Clinton's*

well as on the campaign trail.[13]   As a surrogate, he defended Trump's controversial views and statements,[14] as well as made headlines with his own controversial statements.[15]   He has also defended Trump's positions on and connections (or claimed lack thereof) to Russia.[16]

The "very purpose" of Cohen's numerous campaign and media appearances was "to influence public discourse" by convincing voters to support Trump.   *Biro*, 963 F. Supp. 2d at 271.   Thus, there can be no question that Cohen satisfies the first prong of *Lerman*.

### 2.   Voluntary Injection into a Public Controversy Related to the Subject of the Litigation

The second prong is also satisfied.   "A public 'controversy' is any topic upon which sizeable segments of society have different, strongly held views," even if the topic does not "involve[] political debate or criticism of public officials."   *Lerman*, 745 F.2d at 138.   The

---

*marriage*, YouTube (May 24, 2016), https://www.youtube.com/watch?v=5u6_87Aul5M; CNN, *Michael Cohen denies Trump campaign shake-up*, YouTube (Aug. 17, 2016), https://www.youtube.com/watch?v=Nps8o-godjE.

[13]   Ben Gerber, *Michael Cohen introduces Donald Trump, Cleveland, OH, 9/21/16*, YouTube (Sept. 21, 2016), https://www.youtube.com/watch?v=xoRTvloyb0s; Jose A. DelReal, *Don King uses n-word while introducing Trump at campaign event*, Wash. Post (Sept. 21, 2016), https://www.washingtonpost.com/news/post-politics/wp/2016/09/21/don-king-uses-n-word-while-introducing-trump-at-campaign-event/?utm_term=.673576f55729 (noting that Trump appeared at conference of pastors "organized by longtime Trump associate Michael Cohen . . . to combat the negative impression many minority voters have of [Trump]"); Bloomberg, *Trump Special Counsel: Trump Won't Have a Super-PAC*, YouTube (June 22, 2016), https://www.youtube.com/watch?v=wA0w3jTCNPM (appearing on behalf of Trump at Bloomberg Politics forum).

[14]   For example, Cohen tried to defend Trump's switch from being pro-choice to pro-life, explaining, "People change their positions all the time, the way they change their wives." Jonathan Chait, *Is Donald Trump Putting Us On?*, The New Republic (Feb. 15, 2011), https://newrepublic.com/article/83550/donald-trump-putting-us.

[15]   For example, in response to Ivana Trump's deposition transcript stating that Donald Trump "raped" her, Cohen contended that "by very definition, you can't rape your spouse." Anna Brand, *Trump Lawyer: You can't rape your spouse*, MSNBC (July 28, 2015), http://www.msnbc.com/msnbc/trump-lawyer-you-cant-rape-your-spouse.

[16]   *See, e.g.*, Michael Stott & Catherine Belton, *Trump's Russian Connections*, Fin. Times (Dec. 13, 2016), https://ig.ft.com/sites/trumps-russian-connections/ (quoting Cohen as saying: "The Trump Organisation does not have any properties in Russia and the press' [sic] fascination with this narrative is both misleading and fabricated. Perpetuation of this false connection…or any connection with Russia altogether – is yet another example of the press's liberal bias towards Mr Trump."); Catherine Belton, *The Shadowy Russian Émigré Touting Trump*, Fin. Times (Nov. 1, 2016), https://www.ft.com/content/ea52a678-9cfb-11e6-8324-be63473ce146 ("Mr Cohen dismissed Mr Millian's earlier comments about his work with Mr Trump as 'nothing more than a weak attempt to align himself with Mr Trump's overwhelmingly successful brand'"); Transcript, *New Day* (CNN television broadcast Aug. 12, 2016, 7:00pm ET), http://www.cnn.com/TRANSCRIPTS/1608/12/nday.03.html (Cohen defending Trump's position on Russia, saying "we better get along with Russia because we need Russia in order to defeat ISIS and in order to stabilize the world.").

alleged misdeeds of the President of the United States are an indisputable public controversy, with the populace holding "vastly divergent views" about them. *Id.* Cohen has clearly "plunge[d] into the arena and enter[ed] the fray" of that controversy, given his outspoken promotion of President Trump and his long-time role as President Trump's "fixer," attempting to prevent the public revelation of Trump's alleged misdeeds and do damage control if they are revealed. *Id.*; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 264 n.3 (1986) (noting that "political lobbyists[] are . . . limited-purpose public figure[s]"). The allegedly defamatory statements in the Dossier fit squarely within this controversy. The Dossier alleges improper conduct by President Trump and his campaign, and the CIRs at issue in this lawsuit report on Cohen playing his familiar role as "fixer," attempting to prevent the exposure of and manage the fallout from the Trump campaign's relationship with Russia.

Cohen's injection into the controversy over President Trump's conduct is unquestionably voluntary. He has relentlessly, aggressively, and publicly defended President Trump's conduct, including, for example, his past conduct with women and his statements about racial minorities,[17] as well as on the subject matter of Trump's connections to Russia.[18]

---

[17]   *E.g.* Katie Zezima, *The topic of sexual assault is now at center stage in the 2016 campaign*, Wash. Post. (Oct. 19, 2016), http://wapo.st/2dMEESC?tid=ss_tw&utm_term=.3e2364bc2c25 (defending Trump regarding Trump's suggestion that the women were not attractive enough for him to assault, saying "I think what Mr. Trump is really trying to say is that they're not somebody that he would be attracted to and therefore the whole thing is nonsense."); Rebecca Nelson, *Meet the People Trying to Convince America Donald Trump Isn't Racist*, GQ (Apr. 8, 2016), https://www.gq.com/story/donald-trump-diversity-coalition (Cohen defending Trump's statements about Mexican immigrants, Muslims, and women); Lucia Graves, *Jill Harth speaks out about alleged groping by Donald Trump*, The Guardian (July 20, 2016), https://www.theguardian.com/us-news/2016/jul/20/donald-trump-sexual-assault-allegations-jill-harth-interview?CMP=share_btn_tw (defending Trump against accusations, saying that the woman had "massive credibility issues"); Sandy Rashty, *Donald Trump is more than my boss, he is a patriarch*, The Jewish Chronicle (Mar. 17, 2016), https://www.thejc.com/lifestyle/features/donald-trump-is-more-than-my-boss-he-is-a-patriarch-1.61894 (quoting Cohen as saying "[Trump] wants to see every man and woman; every race, religion, creed and colour achieve their maximum potential in life. It is why he, when elected President of the United States, will go down in history as the Great Unifier").

[18]   *See supra* note 16; *see also* Rosie Gray, *"It Is Fake News Meant to Malign Mr. Trump"*, The Atlantic (Jan. 10, 2017), https://www.theatlantic.com/politics/archive/2017/01/michael-cohen-it-is-fake-news-meant-to-malign-mr-trump/512762/?utm_source=twb; Celeste Katz, *Michael Cohen, Trump's lawyer, emphatically denies claims in salacious circulated report*, Mic.com (Jan. 10, 2017), https://mic.com/articles/165050/michael-cohen-trump-s-

Cohen proudly promotes his role as Trump's "fixer."  As an executive for the Trump Organization, Cohen was referred to as Donald Trump's "pit bull" and he told ABC News that his nickname "means that if somebody does something Mr. Trump doesn't like, I do everything in my power to resolve it to Mr. Trump's benefit. . . . If you do something wrong, I'm going to come at you, grab you by the neck and I'm not going to let you go until I'm finished."[19]  In an interview that took place just days before the Dossier was published by BuzzFeed, Cohen told the Wall Street Journal that he was "the fix-it guy. . . . Anything that [Trump] needs to be done, any issues that concern him, I handle."[20]  In response to a CNN piece on Cohen's role as Trump's loyal fixer, Cohen thanked CNN for the "accurate depiction of me and my role for our @POTUS @realDonaldTrump! #loyalty #RayDonovan #fixer."[21]

In his role as fixer, Cohen has repeatedly sought to prevent the exposure of Mr. Trump's alleged misdeeds.  Examples of such efforts include:

- In the summer of 2015, Cohen responded on behalf of Mr. Trump when a media company approached Mr. Trump to discuss photographs it had obtained of Mr. Trump appearing as if he was going to autograph a woman's bare breast.  Jeremy Frommer, the chief executive of Jerrick Media, said that Cohen "curs[ed] like a maniac" and threatened to sue the company and destroy it.[22]  Cohen then steered him to give the photographs to

---

lawyer-emphatically-denies-claims-about-trump-golden-shower#.6XwUQJsbR (quoting Cohen as saying "there's not a shred of accuracy to anything disclosed in their report"); Hunter Walker, *Trump attorney Michael Cohen: "I have no Russian Kremlin connections"*, Yahoo News (Jan. 11, 2017), https://www.yahoo.com/news/trump-attorney-michael-cohen-i-have-no-russian-kremlin-connections-071908867.html; Michael Cohen (@MichaelCohen212), Twitter (June 24, 2017), 2:47 PM, https://twitter.com/MichaelCohen212/status/878731322449174529 ("More information is released proving that the #RussianDossier is WRONG! Thank you @newyorkpost.").

[19]   Falcone, *supra* note 7.

[20]   Berzon, *supra* note 8.

[21]   Michael Cohen (@MichaelCohen212), Twitter (Mar. 8, 2018, 6:19 PM) https://twitter.com/MichaelCohen212/status/971933570146201600; *see also* Michael Cohen (@MichaelCohen212), Twitter (Feb. 19, 2018 6:39 AM), https://twitter.com/MichaelCohen212/status/965596616332804096 ("Thank you @nytimes for front page profile and using good pictures of me. I will always proudly and fiercely defend my boss, friend and our @POTUS @realDonaldTrump against those who raise false accusations against him and the family.").

[22]   Berzon, *supra* note 8.

David Pecker, the chairman of a tabloid company, who sometimes bought and then buried embarrassing material about high-profile allies.[23]

- Cohen has been involved in numerous efforts to deny or keep quiet the stories of women who allegedly had sexual contact with Mr. Trump.  For example, Cohen was involved in the deal struck with former Playboy model Karen McDougal, which prevented her from going public about her alleged affair with Mr. Trump.[24]  And Cohen's attempt to silence Stephanie Clifford (a/k/a Stormy Daniels) has been in countless headlines over the past few months, including his admission that he paid her $130,000 of his own money (which has prompted concerns that Cohen violated campaign finance laws).[25]  In his statement acknowledging he had paid Ms. Clifford, Cohen added "I will always protect Mr. Trump."[26]

- In early 2016, a legal affairs website uncovered a 1997 court case in which Jill Harth alleged that Trump engaged in offensive sexual behavior toward her over a five-year period.[27]  Cohen released a statement stating that Ms. Harth "would acknowledge" that the story was false, causing Ms. Harth to respond that she stood by the allegations in the complaint and that Cohen's statement "is his alone and is not to be attributed to me."[28]

- In 2015, Cohen threatened a reporter who was reporting on Ivana Trump's statement in a deposition that she had been "raped" by Donald Trump during their marriage, saying in part:

> I will make sure that you and I meet one day while we're in the courthouse. And I will take you for every penny you still don't have. And I will come after your Daily Beast and everybody else that you possibly know . . . So I'm warning you, tread very fucking lightly, because what I'm going to do to you is going to be fucking disgusting. You understand me? . . .You write a story that has Mr. Trump's name in it, with the word 'rape,' and I'm going to mess your life up… for as long as you're on this frickin' planet . . .

---

[23]   Jim Rutenberg et al., *Tools of Trump's Fixer: Payouts, Intimidation and the Tabloids*, N.Y. Times (Feb. 18, 2018), https://www.nytimes.com/2018/02/18/us/politics/michael-cohen-trump.html.

[24]   *Id.*

[25]   *Id*.  Cohen's effort to prevent disclosure of Ms. Clifford's allegations dates back to 2011 when Cohen threatened to sue InTouch magazine if it published her account of her alleged affair with Donald Trump.  *In Touch held Stormy Daniels interview after Trump lawyer threatened to sue*, The Guardian (Jan. 19, 2018), https://www.theguardian.com/us-news/2018/jan/19/in-touch-stormy-daniels-interview-trump-lawyer-confirmed.

[26]   Rebecca Morin & Josh Gerstein, *Trump personal lawyer says he paid Stormy Daniels with his own money*, Politico (Feb. 13, 2018), https://www.politico.com/story/2018/02/13/stormy-daniels-michael-cohen-407913; *see also* Aaron Blake, *Did Trump's lawyer just implicate Trump in the Stormy Daniels payment?* Wash. Post (Feb. 14, 2018), https://www.washingtonpost.com/news/the-fix/wp/2018/02/14/trumps-lawyer-confirmed-the-stormy-daniels-payment-whats-conspicuously-absent-any-denial-that-trump-was-involved/?utm_term=.0ae3134841f7.

[27]   Rachel Stockman, *Exclusive: Inside The $125 Million Donald Trump Sexual Assault Lawsuit*, Law & Crime (Feb. 23, 2016), https://lawandcrime.com/high-profile/exclusive-inside-the-donald-trump-sexual-assault-lawsuit/.

[28]   *Id.*; *see also* Rutenberg, *supra* note 23.

you're going to have judgments against you, so much money, you'll never know how to get out from underneath it.[29]

In short, Cohen's involvement in the controversy over Trump's alleged misdeeds is willful and voluntary; he has proactively sought to defend President Trump and ensure that his conduct is not revealed to the public or contain the fallout if it is.

### 3.    Assumed A Position of Prominence

In order to be a limited purpose public figure, one's "'role in the controversy' must be more than 'trivial or tangential.'"  *Biro*, 963 F. Supp. 2d at 275 (quoting *Underwager v. Salter*, 22 F.3d 730, 734 (7th Cir. 1994)).  Cohen is at the very epicenter of the ongoing public controversy over President Trump's alleged misdeeds.  Indeed, Cohen is currently omnipresent in the news as a result of his efforts to ensure the silence of certain women alleging adultery by Mr. Trump.  However, his prominence as Trump's surrogate and fixer dates back years.[30] Throughout the presidential campaign, Cohen was front-and-center promoting Trump and defending his conduct.  And since BuzzFeed's publication of the Dossier, he has played a vocal and prominent role in disputing its allegations about Trump and himself.  Thus, there can be no doubt that Cohen satisfies the third prong of the *Lerman* test.

---

[29]    Brandy Zadrozny & Tim Mak, *Ex-Wife: Donald Trump Made Me Feel 'Violated' During Sex*, Daily Beast (July 27, 2015), https://www.thedailybeast.com/ex-wife-donald-trump-made-me-feel-violated-during-sex.

[30]    As an illustration of his prominence prior to 2017, the following profile pieces are a small sampling of articles published about Cohen prior to the 2016 election: Falcone, *supra* note 7; Paul Alexander, *Meet Donald Trump's Karl Rove, Michael Cohen*, Daily Beast (March 21, 2011), https://www.thedailybeast.com/meet-donald-trumps-karl-rove-michael-cohen; Josh Nathan-Kazis, *Meet Michael Cohen, Donald Trump's Jewish Wingman*, (July 20, 2015), https://forward.com/news/312123/meet-michael-cohen-donald-trumps-jewish-wingman/; Schreckinger & Martel, *supra* note 11; LawFuel Editors, *Who Is Trump's Attack-Dog Lawyer, Michael Cohen?*, LawFuel (Nov. 25, 2015), http://www.lawfuel.com/blog/trump_lawyer/; Sandy Rashty, *Donald Trump is more than my boss, he is a patriarch*, The Jewish Chronicle (Mar. 17, 2016), https://www.thejc.com/lifestyle/features/donald-trump-is-more-than-my-boss-he-is-a-patriarch-1.61894.

>    **4.      Maintained Regular and Continuing Access to the Media and Other Channels of Effective Communication**

The final prong of the public figure test measures whether the plaintiff "enjoy[s] significantly greater access to the channels of effective communication and hence ha[s] a more realistic opportunity to counteract false statements than" the average private individual.  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 344 (1974).  A news search for Cohen's name—which will return over ten thousand results—makes clear his "regular and continuing access to the media." *Lerman*, 745 F.2d at 137.  In fact, Cohen commented about himself in 2015 that "[f]or a guy who's not part of the [Trump] campaign, you seem to be on TV and in print more than anybody."[31]

Cohen has taken advantage of his media access to engage in the kind of "self help" envisioned by the *Gertz* Court.  418 U.S. at 344.  For example, Cohen has used his access to the media to communicate with the public about the conduct discussed in this motion—including about his payments to Ms. Clifford,[32] his threats to reporters,[33] and more.  Cohen has also repeatedly spoken publicly about the statements in the Dossier, which his complaint contends are defamatory.  Indeed, in the very exhibits that Cohen attaches to his complaint, he provides evidence of his public efforts to "counteract" the allegedly false statements in the Dossier, *Gertz*, 418 U.S. at 344, including lengthy letters to the key Congressional committees investigating Trump's Russian connections.  These letters, Exhibits C and D to the complaint, attach media stories containing statements from Cohen disputing the content of the Dossier.  *See* Compl., Ex.

---

[31]    Schreckinger & Martel, *supra* note 11.

[32]    *See, e.g.*, Emily Jane Fox, *"I Have Never Threatened Her in Any Way": Michael Cohen Offers His Side of the Stormy Daniels Saga*, Vanity Fair (Mar. 19, 2018), https://www.vanityfair.com/news/2018/03/michael-cohen-offers-his-side-of-the-stormy-daniels-saga (reporting recent interview with Cohen about Ms. Clifford's allegations).

[33]    Adam Edelman & Celeste Katz, *Donald Trump's lawyer Michael Cohen apologizes for threatening reporter over rape claims as Ivana Trump rejects allegations*, N.Y. Daily News (July 29, 2015), http://www.nydailynews.com/news/politics/ivana-trump-rejects-rape-allegations-article-1.2306290.

C at 12-13 (attaching Harris, et al., *Spy Agencies Investigating Claims Trump Advisers Worked with Russian Agents*, Wall St. J. (Jan. 9, 2017), which reports "Mr. Cohen, in an interview, denied any such meeting [with Kremlin officials]. . . . 'The story as presented by CNN lacks any accuracy and is yet another attempt to discredit Mr. Trump's landslide victory in this election,' said Mr. Cohen . . ."); *id.* at 17 (attaching Ross, et al., *Former British Spy Gathered Unsubstantiated Intel on Trump, Officials Say*, ABC News (Jan. 11, 2017), which reports "Cohen told ABC News and his boss he has never been in Prague.").[34]  In addition, Cohen has spoken repeatedly against the Dossier to his more than 307,000 followers on Twitter.[35]  Cohen is also reportedly shopping a book proposal, which apparently will focus on his role as the Trump

---

[34]     *See also* Emily Jane Fox, *Michael Cohen Would Take a Bullet For Donald Trump*, Vanity Fair (Sept. 6, 2017), https://www.vanityfair.com/news/2017/09/michael-cohen-interview-donald-trump ("I can tell you for certainty that neither I nor the president were involved, at any point in time, with this Russian conspiracy."); Chuck Ross, *In Senate Remarks, Trump Lawyer Says Democratic Dossier Has "Damaged" His Reputation*, Daily Caller (Sept. 19, 2017),      http://dailycaller.com/2017/09/19/in-senate-remarks-trump-lawyer-says-democratic-dossier-has-damaged-his-reputation/ (quoting from Cohen's remarks before the Senate Intelligence Committee); Mark Maremont, *Key Claims in Trump Dossier Said to Come From Head of Russian-American Business Group*, Wall St. J., Jan. 24, 2017 (quoting Cohen); *Hannity: Trump attorney: CNN, BuzzFeed owe my family an apology*, (Fox News television broadcast Jan. 11, 2017), http://video.foxnews.com/v/5278950164001/; Elaina Plott, *Michael Cohen: Allegations of Secret    Kremlin    Meetings    Are    "Absurd"*,    Washingtonian,    Jan.    10,    2017, https://www.washingtonian.com/2017/01/10/michael-cohen-allegations-prague-meetings-absurd/.

[35]     *See,    e.g.*,    *Michael*    Cohen    (@MichaelCohen212),    Twitter    (Feb.    18,    2018,    8:00    AM), https://twitter.com/MichaelCohen212/status/965254609982935041 ("'Now, there is no allegation in this indictment that any American was a knowing participant in this illegal activity.' #RussianCollusionDelusion as it relates to @POTUS @realDonaldTrump and me!"); Michael Cohen (@MichaelCohen212), Twitter (Feb. 7, 2018, 4:27 PM), https://twitter.com/MichaelCohen212/status/961396098182078469 ("Thank you @ninaburleigh @Newsweek @RepAdamSchiff for continuing the narrative that I had never been to #Prague and the allegations raised against me for over a year are patently false! @POTUS #MAGA"); Michael Cohen (@MichaelCohen212), Twitter (Feb. 6, 2018, 4:44 PM), https://twitter.com/MichaelCohen212/status/961037961533026305 ("For more than a year, I have sworn under oath, appeared on tv and provided written and verbal statements to press...I have never been to #Prague and none of the allegations about me in the #RussianDossier are true. #finally #truth @RepAdamSchiff @RepSwalwell"); Michael Cohen (@MichaelCohen212), Twitter (Jan. 22, 2018, 7:33 PM), https://twitter.com/MichaelCohen212/status/955644523568357378 ("Hard to believe that our @FBI and intelligence communities took this guy seriously! #releasethememo http://nyp.st/2mX74Pj via @nypost"); Michael Cohen (@MichaelCohen212),    Twitter    (Jan.    16,    2018,    4:15    PM), https://twitter.com/MichaelCohen212/status/953420485223763969 ("Thank you @FoxNews @HvonSpakovsky for your article and putting forth the truth that the  #RussianDossier is #fake #defamatory as it relates to me."); Michael Cohen    (@MichaelCohen212),    Twitter    (Jan.    9,    2018,    5:20    PM), https://twitter.com/MichaelCohen212/status/950900224087724037 ("Enough    is    enough    of    the    #fake #RussianDossier. Just filed a defamation action against @BuzzFeedNews for publishing the lie filled document on @POTUS @realDonaldTrump and me!").

"family fix-it guy," discuss his role in the federal probe into Russia's interference in the 2016 election, and address his defamation lawsuit "in some detail."[36]

In short, Cohen has easy and frequent access to the media and has taken advantage of that access. *Gertz*, 418 U.S. at 344; *accord Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1168 (E.D.N.Y. 2003) (public employee alleging he was sexually harassed is a limited purpose public figure where, in presenting his "side of the story," he "participated in more than one press conference related to this lawsuit" and "agreed to be interviewed by several reporters who were writing newspaper articles about the dispute").

Because Cohen both concedes in his complaint and otherwise meets all four prongs of the *Lerman* test, he constitutes a limited purpose public figure.

### C.     Cohen Has Failed to Allege 'Actual Malice': The Malice Allegations in the Complaint Are Insufficient and/or Purely Conclusory

Despite Cohen's recognition that, given his public figure status, he must "allege that the defamatory statement was made with actual malice," Compl. ¶ 31, Cohen has failed to do so. The Complaint's feeble attempts at alleging malice rest either on allegations that simply restate the elements of actual malice or on allegations that the contents of the reports in the Dossier were "unverified." Neither is sufficient.

The Complaint repeats several times entirely conclusory allegations of malice. *See, e.g.*, *id*. ¶ 35 ("Defendants knew that the Dossier reports were false and/or acted with reckless disregard in determining whether the reports were true or false."); *id*. ¶ 29 ("By cause of Defendants' publication of the Dossier, which they knew to be false and/or published with a reckless disregard of whether it was actually true, Plaintiff sustained significant financial and

---

[36]     Maxwell Tani, *Trump's Lawyer Michael Cohen Is Shopping a Book About the First Family, Stormy Daniels, and Russia*, Daily Beast (Feb. 13, 2018), https://www.thedailybeast.com/trumps-lawyer-michael-cohen-is-shopping-a-book-about-the-first-family-stormy-daniels-and-russia.

reputational damages."). These should be summarily discarded as insufficient. *Iqbal*, 556 U.S. at 678; *Biro*, 807 F.3d at 545–46; *see also Schatz v. Republican St. Leadership Comm.*, 669 F.3d 50, 56 (1st Cir. 2012) (uses of "actual-malice buzzwords" are "merely legal conclusions, which must be backed by well-pled facts"); *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing*, *Inc.*, 674 F.3d 369, 377–78 (4th Cir. 2012) ("Appellants' assertion that Appellees' statements 'were known by [them] to be false at the time they were made, were malicious or were made with reckless disregard as to their veracity' is entirely insufficient. This kind of conclusory allegation—a mere recitation of the legal standard—is precisely the sort of allegations that *Twombly* and *Iqbal* rejected.").

The Complaint also repeatedly alleges that the relevant reports in the Dossier were "not verified" or that Defendants did not attempt to verify the truth of the allegations about Cohen. *See* Compl. ¶ 5 ("Defendants knew that these reports [in the Dossier] were not verified" yet they did not "attempt to determine the veracity of these reports with Plaintiff himself."); *id.* ¶ 18 ("Defendants published the Dossier and CIRs despite the fact that they did not know whether the defamatory accusations in CIRs 134-136 & 166 about Plaintiff were true."); *see also id.* ¶ 14 (alleging that defendants have not "stated that the Dossier and CIRs 134-136 & 166 were compiled in a fashion that accords with standards observed in their professions for establishing the credibility of sources and for verifying information provided by the sources"). Such allegations do not come close to plausibly alleging actual malice.

Cohen nowhere alleges particularized facts that Defendants knew the statements about him were false or that they harbored "serious doubts" about the truth of them. On this basis alone, he has failed to allege actual malice. *Behar*, 238 F.3d at 174 (actual malice standard requires evidence of "subjective doubts" about the veracity of the allegedly defamatory

statements).  Furthermore, the "[f]ailure to investigate does not in itself establish bad faith," *St. Amant*, 390 U.S. at 733 (citation omitted), rendering insufficient the Complaint's allegations about the allegedly unverified nature of the statements in the Dossier and Defendants' purported failure to verify them.  *See also Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) ("failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard"); *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 124 (2d Cir. 2013) ("mere proof of failure to investigate, without more, cannot establish reckless disregard for the truth") (quoting *Gertz*, 418 U.S. at 332); *World Boxing Council v. Cosell*, 715 F. Supp. 1259, 1266 (S.D.N.Y. 1989) ("[T]here is no rule that an author must conduct an investigation absent a showing that he had reason to doubt the veracity of his sources, or possessed other information leading him to question the truth of his assertion.").

And, although publishing a story based "wholly on" on a single "anonymous source" can be probative of malice where there is reason to doubt the source, Cohen has not alleged that Defendants did so here.  The complaint alleges that the defamatory statements concerning Cohen in the CIRs were authored by Christopher Steele and given to Defendants by Steele.  Compl. ¶¶ 4, 16.  Steele is "a former British intelligence officer" who "used his own Russian sources to compile the reports."  *Id.* ¶ 4.  Although Steele's multiple sources are not named in the Dossier, "that does not make the source[s] 'anonymous'" in such a way that could be probative of actual malice by Defendants.  *Biro*, 963 F. Supp. 2d at 286.  Malice can only be inferred where, for example, "a story is based wholly on an unverified anonymous telephone call."  *Id.* (quotation marks omitted).  Indeed, this Court has distinguished between "unnamed" and "anonymous" sources and noted that the fact that an article relies on *unnamed* sources does not make actual malice any more plausible.  *Id.*; *see also Cabello-Rondón*, 2017 WL 3531551, at *9.  Moreover,

23

Cohen has alleged no "facts that would have prompted the . . . defendant[s] to question the reliability of any of the . . . unnamed sources at the time the Article was published." *Biro*, 807 F.3d at 546. Thus, the fact that the sources are not identified by name in the reports allegedly published by Defendants does not reasonably infer actual malice.

The complaint lastly attempts to allege actual malice based on the statements in CIR 135 that a source was unsure of the identities of the officials or the exact dates or locations of the meetings described in that report.[37] The complaint alleges that "[c]learly, this report was generated with the knowledge that it was false and/or with a reckless disregard as to whether any of it contained a modicum of truth." Compl. ¶ 24. But the complaint acknowledges that Defendants did not author CIR 135 and provides nothing to support a reasonable inference that Defendants acted with reckless disregard when they allegedly published that report. Indeed, the complaint alleges that Defendants published CIR 135 along with CIR 136; CIR 136, dated the next day, follows up to provide some of the missing details about those alleged meetings, reporting that the source (a "Kremlin advisor") stated that "these meeting/s were originally scheduled for COHEN in Moscow but" were shifted to Prague "when it was judged too compromising for [Cohen] to travel to the Russian capital." Ex. 4 at 6–7. And, of course, the fact that the source was not originally certain of the identities, dates or locations of the meetings in no way leads to the inference that the report "was generated with the knowledge that it was false and/or with a reckless disregard as to" the truth. Compl. ¶ 24. To the contrary, it suggests that the source was being candid and forthcoming about the limits of his or her knowledge.

---

[37]   CIR 135 describes Cohen's meetings with Russian Presidential Administrative Legal Department officials "in an EU country in August 2016" in order to "contain further scandals involving MANNAFORT's commercial and political role in Russia/Ukraine and to limit the damage arising from exposure of . . . Carter PAGE's secret meetings with Russian leadership figures in Moscow the previous month." *See* Compl., Ex. A at 4; *see also* Naunton Decl., Ex. 4 at 4 (reproducing the CIRs at issue in more legible form). At the end of CIR 135, there is a "Company Comment," which states that the "Kremlin insider [the confidential source] was unsure of the identities of the PA officials with whom COHEN met secretly in August, or the exact date/s and locations of the meeting/s. . . . However s/he continued to try to obtain these." Ex. 4 at 5.

In sum, the complaint does not contain a single allegation that "permit[s] the conclusion that the defendant[s] in fact entertained serious doubts as to the truth of" the relevant reports in the Dossier.  *Behar*, 238 F.3d at 174.  Accordingly, Cohen has failed to plausibly allege actual malice and his complaint must be dismissed.

## IV.   **CONCLUSION**

For the foregoing reasons, the Court should dismiss the complaint.

Dated:  March 30, 2018                                     Respectfully submitted,

<div style="margin-left:40%">

*/s/ Shawn P. Naunton*
Shawn P. Naunton
ZUCKERMAN SPAEDER LLP
485 Madison Avenue, 10th Floor
New York, New York 10022
Tel: (212) 704-9600
Fax: (917) 261-5864
snaunton@zuckerman.com

*/s/ Steven M. Salky*
William W. Taylor, III (pro hac vice motion
    pending)
Steven M. Salky (pro hac vice motion pending)
Rachel F. Cotton (pro hac vice motion pending)
Ezra B. Marcus (pro hac vice motion pending)
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, DC  20036
Tel: (202) 778-1800
Fax: (202) 822-8106
wtaylor@zuckerman.com
ssalky@zuckerman.com
rcotton@zuckerman.com
emarcus@zuckerman.com

*Counsel for Defendants*
*Bean LLC, d/b/a Fusion GPS, and*
*  Glenn Simpson*

</div>

25

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of March 2018, the foregoing was served on all counsel of record via CM/ECF.

/s/ Shawn P. Naunton