# Exhibit 3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------------X
MICHAEL COHEN,

                      Plaintiff,

             -against-

BUZZFEED, INC., BEN SMITH,
KEN BENSINGER, MIRIAM ELDER,
and MARK SCHOOFS,

                   Defendants.
---------------------------------------------------------------------- X

**COMPLAINT**

Index No.: _____

Plaintiff, MICHAEL COHEN (hereinafter "Plaintiff"), by and through his attorneys, Gerstman Schwartz and Malito, LLP, complaining of the Defendants BUZZFEED, INC., BEN SMITH, KEN BENSINGER, MIRIAM ELDER, and MARK SCHOOFS (hereinafter "Defendants"), sets forth and alleges as follows:

**PRELIMINARY STATEMENT**

1.      This is an action for defamation based on false, damaging, and highly inflammatory statements about Plaintiff. The statements were contained in the "Dossier," (annexed hereto as "**Exhibit A**"), published in its entirety by Defendant BuzzFeed, Inc. ("BuzzFeed") on January 10, 2017 (annexed hereto as "**Exhibit B**"). The Dossier was published together with an article entitled "These Reports Allege Trump Has Deep Ties to Russia" (the "Article") written by Defendant Ken Bensinger and edited by Defendants Miriam Elder and Mark Schoofs. On information and belief, the decision to publish the Article and Dossier was made by BuzzFeed's Editor-in-Chief, Defendant Ben Smith.

2.      BuzzFeed admitted in the Article that the Dossier "include[d] specific, unverified and potentially unverifiable allegations of contact between Trump aides and Russian operatives" and that "[t]he allegations are unverified." Even though Defendant BuzzFeed expressly

1

acknowledged the unverified (and potentially unverifiable) nature of the Dossier's allegations, Defendant BuzzFeed published the un-redacted Dossier and the Article anyway – without attempting to determine the veracity of these reports with Plaintiff himself.

3.      Plaintiff seeks an award of compensatory and punitive damages for the harm to his personal and professional reputation, current business interests, and impairment of business opportunities that resulted from the blatantly false and defamatory statements and implications about him published by Defendants.

## PARTIES

4.      Plaintiff Michael Cohen is an attorney for Donald Trump and resident of New York, New York.

5.      Defendant BuzzFeed, Inc., a Delaware corporation, is a global news organization headquartered in New York City.  BuzzFeed describes itself as "the leading independent digital media company delivering news and entertainment to hundreds of millions of people around the world."

6.      Defendant Ben Smith, on information and belief, resides in Brooklyn, New York. He is the Editor-in-Chief of BuzzFeed under whose leadership, according to BuzzFeed, its "coverage has grown to include politics, business, investigative reporting, longform journalism, and entertainment while growing the site's traffic to over 200M monthly unique visitors."

7.      Defendant Ken Bensinger is an investigative reporter for BuzzFeed based in Los Angeles, California – and the author of the Article.

8.      Defendants Miriam Elder and Mark Schoofs are, respectively, BuzzFeed's News World Editor and News Investigations Editor.  On information and belief, they edited the Article and are based in New York City.

2

9.      On information and belief, Defendants Smith, Bensinger, Elder and Schoofs are employees of BuzzFeed, and, in that capacity, their professional conduct is subject to BuzzFeed's control and supervision.

## FACTUAL ALLEGATIONS

10.      On January 10, 2017, Defendant BuzzFeed published the Article with the headline "These Reports Allege Trump Has Deep Ties To Russia."  The "Reports" referred to in the headline consist of seventeen Company Intelligence Reports 2016 ("CIRs"), "prepared for a political opponent of Trump by a person who is understood to be a former British intelligence agent," totaling 35 pages, which together comprise the Dossier.  Four of these CIRs, 134-136 & 166, pertain to Plaintiff. See Exhibit B.

11.      The Article describes the Dossier as "a collection of memos written over a period of months" containing "explosive – but unverified – allegations that the Russian government has been cultivating, supporting and assisting [then] President-elect Donald Trump for years and gained compromising information on him," including "specific, unverified, and potentially unverifiable allegations of contact between Trump aides and Russian operatives." See Exhibit B.

12.      Defendant BuzzFeed acknowledged that its "reporters in the US and Europe have been investigating various alleged facts in the [D]ossier but have not verified or falsified them," and that the Dossier's allegations are "explosive."  Defendant Smith nevertheless made the decision to publish, even in spite of his awareness that the Dossier was the secret product of a secretive private investigator, not intended to be part of public discourse or to make an argument in a public debate and that the Dossier's content also bore multiple hallmarks of its irresponsible collection and compilation.  Additionally, on information and belief, Defendant BuzzFeed was aware that

3

there were numerous other media outlets made privy to these reports and that no other news organization decided to publish the Dossier. See Exhibit B.

13.    In publishing the Dossier's unverified content, BuzzFeed did so in a manner that allowed it to reach BuzzFeed's claimed readership of "hundreds of millions of people around the world" – with BuzzFeed's additional awareness that it would then be republished to millions more readers in every stratum of global society.

14.    The Article specifically refers to Plaintiff as having been named in the Dossier, while acknowledging that "[t]he allegations are unverified."  The Article, by explicitly referring to Plaintiff, increases the likelihood that persons interested in Plaintiff (including but not limited to government intelligence officials, regulatory authorities, financial institutions, print and online news media and journalists) would search the Dossier to find out what it says about Plaintiff. See Exhibit B.

15.    Defendants published the Dossier and CIRs despite the fact that they did not know whether the defamatory accusations in CIRs 134-136 & 166 about Plaintiff were true and/or published them with reckless disregard as to whether they were true or false.

16.    CIR 134, dated October 20, 2016, is the first report to discuss Plaintiff in defamatory fashion.  In the "Summary" section of this report, it states: "Kremlin insider highlights importance of TRUMP's lawyer, Michael COHEN in covert relationship with Russia.  COHEN's wife is of Russian descent and her father a leading property developer in Moscow."  Further down, in the "Detail" section, the report again states that Plaintiff played a "key role in the secret TRUMP campaign/Kremlin relationship." See Exhibit A.

17.    Under this report, Plaintiff is alleged to have an inappropriate and possibly criminal relationship with the Russian government stemming from his wife's familial relations with a

4

INDEX NO. 150231/2018
Case 1:18-cv-00183-JPO   Document 26-3   Filed 04/11/18   Page 6 of 11 RECEIVED NYSCEF: 01/09/2018

Russian property developer.  None of these allegations are true.  Plaintiff does not have any relationship with Russian officials and his father-in-law is not a leading property developer in Moscow; he has only been to Russia once.  In fact, Plaintiff's father-in-law does not even own a vacation home in Sochi, nor has he ever been there.  Additionally, Plaintiff's wife was born in the Ukraine region and immigrated to the United States over forty (40) years ago; she has never been to Russia.  And the harm caused by the allegations is obvious: Plaintiff is being accused of maintaining a valuable role in candidate Trump's allegedly unlawful relationship with Russia and, in the context of the rest of the Dossier, the report implies that Plaintiff was vital in the alleged unlawful manipulation of the 2016 U.S. presidential election.  This has also harmed Plaintiff's reputation in his profession as an attorney-at-law.

18.     CIR 135, dated October 19, 2016, is similarly defamatory, beginning with the title, "RUSSIA/US PRESIDENTIAL ELECTION: THE IMPORTANT ROLE OF TRUMP LAWYER, COHEN IN CAMPAIGN'S SECRET LIAISON WITH THE KREMLIN."  In the "Summary" section, it states that Plaintiff "engaged with Russians in trying to cover up scandal of MANAFORT and exposure of PAGE and meets Kremlin officials secretly in EU in August in pursuit of this goal."  The "Detail" section explains this allegation further, first stating that Plaintiff was important in "the ongoing secret liaison relationship between the New York tycoon's [Trump's] campaign and the Russian leadership," which grew following Mr. Manafort's departure as candidate Trump's campaign manager in August 2016, then states that Plaintiff became "heavily engaged in a cover up and damage limitation operation in the attempt to prevent the full details of TRUMP's relationship with Russia being exposed." See Exhibit A.

19.     The report goes on to describe how Plaintiff's role in attempting a cover-up, finding that Plaintiff "met secretly with several Russian Presidential Administration (PA) Legal

5

Department officials in an EU country in August 2016" in order to find ways to contain Mr. Manafort's connections to Russia and Ukraine and Mr. Page's secret meetings with Russian leadership figures in Moscow, with "the overall objective" being "to sweep it all under the carpet and make sure no connections could be fully established or proven." See Exhibit A.

20.     Finally, the report states that because the relationship between candidate Trump and Russia had become "'hotter'" since August 2016, the Russian government used individuals from pro-government policy institutes for communications with the Trump campaign, while Plaintiff "continued to lead for the TRUMP team." See Exhibit A.

21.     Neither of these allegations are true as Plaintiff never met with Russian officials for the purpose of discussing former Trump campaign officials.  Indeed, the salacious report even admits that the insider who provided this information was "unsure of the identities of the PA officials with whom COHEN met secretly in August, or the exact date/s and locations of the meeting/s."  Clearly, this report was generated with the knowledge that it was false and/or with a reckless disregard as to whether any of it contained a modicum of truth. See Exhibit A.

22.     The harm caused by these fallacious allegations is also clear: Plaintiff is once again linked to the unlawful election rigging conspiracy through baseless accusations, but this time through the implication that he was aware of the acts of two Trump campaign officials who have been themselves linked to this conspiracy and personally sought to conceal their illicit acts, and has been damaged in his profession.

23.     CIR 136, dated October 20, 2016, followed-up on the previous report as to Plaintiff's alleged meetings with Russian officials in August of 2016 by finding that a "Kremlin insider" indicated to the source that Plaintiff's "reported contact/s took place in Prague, Czech Republic."  In the "Summary" section, CIR 136 also states that Konstantin Kosachev, the Head of

the Foreign Relations Committee for Russia and a "Pro-Putin leading Duma figure," was involved as a "'plausibly deniable' facilitator" who "may have participated in the August meeting/s with COHEN." In the "Detail" section, it is claimed that a Russian parastatal organization, "Rossotrudnichestvo," was "being used as a cover" for the relationship between the Trump campaign and Kremlin officials that these meetings between Plaintiff and Russian officials may have occurred in this organization's Prague office in order to protect the Russian government from suspicion. See Exhibit A.

24.    None of these allegations are true. Plaintiff has never even been to Prague, Czech Republic, let alone in August of 2016, and therefore could not have met with Mr. Kosachev, nor could he have met with Kremlin officials in a Russian parastatal organization's office. These muckraking statements are thus without any basis in truth and have only served to harm Plaintiff's reputation as an attorney and have damaged Plaintiff by linking him to the Trump campaign's alleged unlawful acts of meddling with the presidential election.

25.    CIR 166, dated December 13, 2016, followed up from CIRs 135 & 136 by first stating that Plaintiff was accompanied to the meeting(s) by three colleagues and changes when they took place from August of 2016 to "either in the last week of August or the first week of September." Additionally, the report describes the topic of the Prague meeting(s), finding:

> the agenda comprised [of] questions on how deniable cash payments were to be made to hackers who had worked in Europe under Kremlin direction against the CLINTON campaign and various contingencies for covering up these operations and Moscow's secret liaison with the TRUMP team more generally.

Further, Plaintiff is accused of having agreed to "contingency plans for various scenarios to protect the [hacking] operation, but in particular what was to be done in the event that Hillary CLINTON won the presidency." Namely, the alleged plan was to ensure that "all cash payments owed [to

7

hackers] were made quickly and discreetly and that cyber and other operators were stood down/able to go effectively to ground to cover their traces." See Exhibit A.

26.     Through their publishing of CIR 166 Defendants accused Plaintiff of not only meeting with Russian officials, but knowing about the illegal hacking and formulating plans on how to ensure that this operation could continue and would not be later uncovered.  The report also implicates Plaintiff in the hacking of the U.S. election by finding that he helped determine how to recompense the hackers responsible.  As aforementioned, Plaintiff has never even been to Prague, Czech Republic, and therefore none of the accusations are true in the slightest.  And the damage caused by these false allegations was indescribably destructive and irreversible.  The report describes Plaintiff as overseeing a significant part of an illegal operation that permanently altered global politics which, to put it lightly, severely harmed his personal, professional, and institutional reputation.

27.     By cause of Defendants' publication of the Dossier, which they knew to be false and/or published with a reckless disregard of whether it was true or false, Plaintiff sustained significant financial and reputational damages.  In particular, by publishing the fallacious reports concerning Plaintiff, Plaintiff was subjected to at least two separate Congressional investigations by the House Permanent Select Committee on Intelligence (annexed hereto as "**Exhibit C**") and the Senate Select Committee on Intelligence (annexed hereto as "**Exhibit D**").

### CAUSE OF ACTION

Intentional Tort – Defamation Per Se
(As against all Defendants)

28.     Plaintiff repeats, reiterates, and re-alleges each and every allegation above as though set forth herein.

8

Case 1:18-cv-00183-JPO   Document 26-3   Filed 04/11/18   Page 10 of 11

29.     In order to state a cause of action for defamation, a plaintiff must allege the making of a false statement which was published to a third party, and resulting damages.  When the plaintiff is a public figure, he must also allege that the defamatory statement was made with actual malice, meaning that the party who published the statement knew it was false or acted with reckless disregard to its truth or falsity.

30.     Further, a cause of action for defamation per se is stated when the false statements utterly injure a plaintiff in his trade, business, or profession or accuse him of committing a serious crime.

31.     Through their posting of the Dossier and CIRs 134-136 & 166, Defendants published to a worldwide public false and defamatory statements concerning Plaintiff.

32.     Namely, Defendants published statements accusing Plaintiff of playing a key role in the conspiracy formed by candidate Trump's presidential campaign team and the Russian government to rig the 2016 U.S. presidential election through meeting with Kremlin officials in Prague, Czech Republic, in August and/or September 2016 to decide: (1) how to cover-up the crimes committed by Paul Manafort and Carter Page; (2) how to pay off the hackers who had allegedly been paid by the Trump campaign and the Russian government to undermine candidate Hillary Clinton's presidential campaign; and (3) how to ensure that the hacking operation continued and cover it up from later discovery, if necessary.

33.     By reason of the foregoing acts of Defendants, Plaintiff sustained, and will continue to sustain, serious financial and reputational damages, in particular to his profession as an attorney and due to the serious crimes he has been accused of committing.

### JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

9

FILED: NEW YORK COUNTY CLERK 01/09/2018 07:33 PM INDEX NO. 150231/2018
NYSCEF DOC. NO. 2 RECEIVED NYSCEF: 01/09/2018

## PRAYER FOR RELIEF

**WHEREFORE**, upon all of the facts and circumstances herein alleged, Plaintiff respectfully requests that this Court:

A.      Grant judgment against Defendants on each and every cause of action alleged herein;

B.      Grant an order awarding Plaintiff damages in an amount to be determined at trial, together with interest and the costs and disbursements of this action, plus reasonable attorneys' fees, punitive damages, as well as any other damages permitted to be recovered by law pursuant to the above causes of action; and

C.      Grant any such further relief as the Court deems just, proper, and equitable.

Dated: January 9, 2018
      Garden City, New York

GERSTMAN SCHWARTZ & MALITO, LLP

/s/ David M. Schwartz
By: _____
    David M. Schwartz, Esq.
    1399 Franklin Avenue, Suite 200
    Garden City, New York 11530
    Tel. No.: (516) 880 – 8170

10